IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-254-BO

| | |
|---|---|
| SUMMIT HOSPITALITY GROUP, LTD, )<br>                 Plaintiff, )<br>)<br>v. )<br>)<br>THE CINCINNATI INSURANCE )<br>COMPANY, )<br>                 Defendant. ) | **O R D E R** |

This cause comes before the Court on defendant's motion to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded, defendant has replied, and a hearing on the matter was held before the undersigned on February 16, 2021, at Raleigh, North Carolina. In this posture the motion is ripe for ruling. Also ripe for ruling are defendant's motion to dismiss plaintiff's original complaint and defendant's motion to stay discovery. For the reasons that follow, the motion to dismiss the amended complaint is granted and the remaining motions are denied as moot.

## BACKGROUND

Plaintiff initiated this action by filing a complaint in Wake County Superior Court on May 7, 2020. Defendant removed the action to this Court pursuant to its diversity jurisdiction on June 12, 2020. Defendant then moved to dismiss plaintiff's complaint. Plaintiff thereafter filed an amended complaint, which defendant also moved to dismiss. Defendant also seeks to stay discovery pending a ruling on its motion to dismiss.

Plaintiff is a hotel and restaurant management and development firm which owns and operates approximately eighteen hotel and restaurant properties and related facilities throughout

North Carolina. Amd. Compl. ¶ 11. Plaintiff entered into an insurance contract with defendant on May 1, 2019, policy number ECO 053 49 29, with a policy period effective May 1, 2019, to May 1, 2021. *Id.* ¶ 12. The policy provides that defendant will indemnify plaintiff for covered losses, including but not limited to business income losses at covered locations. *Id.* Covered locations are defined by the policy to include twenty-two business locations listed in an endorsement. *Id.* ¶ 13. Plaintiff alleges that the policy is an "all risks" policy, as it provides coverage for risks of loss unless the loss is caused by a peril that is excluded by the policy. *Id.* ¶ 14.

Specifically, plaintiff alleges that the policy includes an income endorsement that does not contain an exclusion for a virus or viral pandemic. Plaintiff alleges that the income endorsement provides for coverage for loss of business income due to the slowdown of business activities while access to plaintiff's business locations is interrupted by an order of civil authority as a result of loss or damage to property at non-plaintiff locations. *Id.* ¶¶ 16-18. Plaintiff alleges that the interruption by civil authority coverage does not include the term "physical" when describing the loss or damage to the property, there is no geographic scope limitation stated in that provision, and plaintiff paid an additional premium for a period of loss extension to cover 360 consecutive days. *Id.* ¶¶ 19-22. Finally, plaintiff alleges that the income endorsement and interruption by civil authority provision specifically includes coverage for earnings and extra expenses, which includes loss of rents, defined by the policy as the loss of net income that would have been earned or incurred as rental income from tenancy occupancy at plaintiff's locations. *Id.* ¶ 23.

Plaintiff contends that several executive orders issued by North Carolina's governor in response to the COVID-19 pandemic, some of which limited access to facilities that sell food and beverage and closed in-person dining in restaurants, trigger coverage under the policy.

2

Plaintiff alleges that these executive orders were issued as a result of loss or damage to property and people. *Id.* ¶¶ 29-34. Plaintiff alleges that these executive orders have caused it to experience substantial losses to its business income, including rents from its hotel tenancies and sales from its restaurants, and that plaintiff has had to substantially reduce its business and lay off a number of employees. *Id.* ¶¶ 35-36. Plaintiff submitted claims to defendant on May 6, 2020, and on June 3, 2020, defendant denied plaintiff's claims in their entirety. *Id.* ¶¶ 37-39.

Plaintiff seeks a declaratory judgment that the policy provides insurance coverage for plaintiff's insurance claims and that defendant is required to cover the claims. Specifically, plaintiff seeks a declaration that the policy provides business interruption coverage because access to plaintiff's business locations has been interrupted by civil authorities as a "result of loss or damage to the property" at non-plaintiff locations by COVID-19. Plaintiff also alleges claims for breach of the insurance contract, breach of the covenant of good faith and fair dealing, violation of Chapter 75 of the North Carolina General Statutes, and bad faith denial and handling of the claims.

## DISCUSSION

Defendant has moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court "need not accept the plaintiff's legal conclusions drawn

3

from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal alteration and citation omitted). The Court may further consider documents attached to or expressly incorporated into the complaint without converting the motion to one for summary judgment, so long as the authenticity of the documents is undisputed and they are integral to the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

At the outset, as the amended complaint supersedes the original complaint, defendant's motion to dismiss the original complaint is denied as moot. *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017).

The parties agree that this Court applies North Carolina law to interpret the language used in the policy at issue. *See Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428 (2000) ("the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract"). Under North Carolina law, the meaning of the language used in an insurance contract is a question of law. *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 512 (1993). "Where no definition for a term is contained in the policy, unambiguous terms will be given the meaning afforded them in ordinary speech unless the context indicates that another meaning was intended." *Id.* Any ambiguity in the terms of the policy is construed against the insurer. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9 (2010). A policy provision is ambiguous if the court finds it to be "fairly and reasonably susceptible to multiple constructions[.]" *Id.* at 10. If possible, all clauses of an insurance policy are to be construed together. *Id.* at 9. Finally, it is the insured's burden to show that its claim fits within the policy. *Hobson Const. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590 (1984).

4

A.  Policy provisions

The policy at issue is entitled Commercial Output Program – Property Coverage Part (Property Coverage) and Commercial Output Program – Income Endorsement (Income Endorsement). *See* [DE 23-1].[1] Under Section B of the Property Coverage provision, coverage is provided for "direct physical loss or damage to covered property at 'covered locations' caused by a covered peril." *Id.* at 23 of 125. Covered property includes building property, meaning buildings and structures, as well as business personal property. *Id.* at 23-24 of 125. There appears to be no dispute that plaintiff's properties are covered locations. Covered perils are defined as "risks of direct physical loss or damage, unless the loss or damage is limited by the 'terms' of this Coverage Part, or caused by a peril that is excluded." *Id.* at 35 of 125.

Plaintiff bases its claims on the Income Endorsement. The Income Endorsement was added to the policy by Form EK 211 09 06, which expressly states that

> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL OUTPUT PROGRAM - PROPERTY COVERAGE PART**
>
> Income Coverage is provided as described below when a "limit" is shown on the "declarations". When coverage is provided for one or more of the Income Coverage Options, the "terms" under the Commercial Output Program – Property Coverage Part apply separately to each.

*Id.* at 81 of 125. The Income Endorsement further states that the Property Coverage is amended to state

> Income Coverages
> a. We provide the coverages shown below in Paragraphs b. through e. during the "restoration period" when your "business" is necessarily totally or partially interrupted. This "interruption" must be caused by direct physical loss or damage

---

[1] Defendant has attached the pertinent policy and forms to its motion to dismiss and plaintiff has not contested their authenticity.

> from a covered peril to a building or business personal property at "covered locations" or in the open (or in vehicles) within 1,000 feet thereof.

*Id.*

Plaintiff further relies on the supplemental income coverage for interruption by civil authority, which is provided as follows:

> We extend your coverage for earnings and extra expense to include loss while access to "covered locations" is specifically denied by an order of civil authority. This order must be an [sic] result of loss or damage to property other than at "covered locations" and caused by a covered peril. This extension is limited to 30 consecutive days from the date of the order. This does not increase the "limit".

*Id.* at 83 of 125. As discussed above, a covered peril is defined by the Property Coverage as a risk of direct physical loss or damage, unless the risk is otherwise limited or excluded by the policy's terms.

B.  Analysis

At bottom, a plain reading of the policy at issue and its provisions requires that there be a direct *physical* loss or damage to plaintiff's properties in order for coverage under either the Property Coverage or the Income Endorsement to apply. These provisions are not ambiguous.

For example, the Income Endorsement, on which plaintiff relies, is limited by its own terms to the Restoration Period. [DE 23-1 at 81 of 125]. The Restoration Period is defined as ending on the date that the property should be repaired, rebuilt, or replaced. *Id*. This support's the Court's reading of the policy terms, which requires that direct *physical* loss or damage be incurred prior to coverage under the Income Endorsement, where income coverage would be provided during the restoration period, or while the property is rebuilt, repaired, or replaced. *See also Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *7 (S.D. Ala. Oct. 21, 2020) (construing similar restoration period provision to support conclusion that physical loss, not merely loss of use, was required to trigger coverage).

6

In *Harry's Cadillac-Pontiac-GMC Truck Company v. Motors Insurance Corporation*, 126 N.C. App. 698 (1997), the North Carolina Court of Appeals interpreted a similar policy which provided business interruption coverage and which required that loss of income be caused by a direct physical loss. Because the loss of business income was caused by a snowstorm which prevented access to the dealership, but which did not cause any physical loss or damage to the property, there would be no coverage. *Id.* at 702. The same result is dictated here by the plain and unambiguous terms of the policy.

Plaintiff argues that there is ambiguity in the policy, asking the Court to construe the phrase "direct physical loss or damage caused by a covered peril" as providing for coverage caused by (1) direct physical loss or (2) damage caused by a covered peril. However, unlike the case relied upon by plaintiff in support of this argument, *Great Am. Ins. Co. v. Mesh Cafe, Inc.*, 158 N.C. App. 312 (2003) (unpublished), the Income Endorsement provision in this policy applies when there is "direct physical loss or damage from a covered peril *to a building or business personal property at covered locations* . . . ." [DE 23-1 at 81 of 125] (emphasis added). Coverage under this policy is expressly triggered by physical loss or damage to property, and further the coverage period is expressly defined as the time it takes to rebuild, repair, or replace the damaged property. To adopt plaintiff's reading, which would allow for intangible damage to trigger coverage, would render other sections of the provision ineffective, which is something the Court cannot do. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506 (1978) (when possible, "every word and every provision [in the policy] is to be given effect").

Plaintiff has further failed to state a claim that the interruption by civil authority provision provides coverage. That provision requires, *inter alia*, access to be denied at covered locations. Plaintiff does not allege that it was denied access to any of its covered locations. Although the

7

executive orders identified in the complaint may have restricted access to plaintiff's business locations, for example by preventing or restricting in-person dining, restricted access is not the same as denied access. Moreover, the civil authority order must be as a result of loss or damage to property other than a covered location caused by a covered peril. As discussed above, a covered peril is a risk of direct physical loss or damage, which plaintiff has failed to sufficiently allege occurred in this case.

Finally, plaintiff's amended complaint does allege that COVID-19 survives and remains infectious on surfaces and objects for days, thus physically affecting and damaging all with which it comes into contact. Amd. Compl ¶ 25. However, the Court need not decide whether the presence of the coronavirus would satisfy the policy's requirement for direct physical damage or loss because plaintiff has not alleged that COVID-19 was discovered in any of its covered properties.

Plaintiff has alleged no physical loss or damage caused by the coronavirus or COVID-19. The civil authority interruption provision is further inapplicable. The facts alleged in the complaint do not come within the policy at issue and plaintiff's declaratory judgment claim fails. As plaintiff cannot show that it is entitled to a declaration of coverage, its remaining claims fail as well.

## CONCLUSION

Accordingly, for the reasons discussed above, defendant's motion to dismiss the original complaint [DE 15] is DENIED AS MOOT, defendant's motion to dismiss the amended complaint [DE 21] is GRANTED, and defendant's motion to stay discovery [DE 24] is DENIED AS MOOT as this action is DISMISSED in its entirety. The clerk is DIRECTED to close the case.

SO ORDERED, this 4 day of March, 2021.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE